UNITED STATES
v.
David Ross WILLIAMS.
CR73–5118.

United States District Court,
D. South Dakota.

Feb. 28, 1974.

Edward Carpenter, Asst. U.S. Atty., Joseph M. Butler, Horace Jackson, Rapid City, S.D., for plaintiff.

Joseph Beeler, Wounded Knee Legal Defense/Offense Committee, Sioux Falls, S.D., for defendant.

MEMORANDUM OPINION

BOGUE, District Judge.

The defendant has made a motion to suppress certain evidence that was seized at the United States roadblock on the Big Foot Trail leading to the village of Wounded Knee, South Dakota. An evidentiary hearing was held on November 7 and 8, 1973.

On Sunday, April 29, 1973, about 2:00 p. m., the defendant was proceeding down the Big Foot Trail in the direction of Wounded Knee. He was routinely stopped at the government roadblock there. At that point he was not free to leave. Mr. Williams was removed from his car and informed that his car was to be searched. Mr. Williams expressly refused to consent to such a search. Furthermore, the defendant was not "under arrest" at this time by the testimony of F.B.I. agents at the roadblock. The contents of the defendant's car were completely removed and spread out on

the highway. His possessions were completely searched which resulted in the discovery of a small amount of marijuana in a small nylon bag. At that point Mr. Williams was placed under arrest and charged with possession of marijuana pursuant to 21 U.S.C. § 844(a).

There is no question in this Court's mind but that the evidence established that there was a serious law enforcement problem in the Wounded Knee area. An armed band, composed of members of the American Indian Movement, had taken over the whole village on February 27, 1973 and for a period forcibly held hostages. This same organization had been just recently involved in an incident at Custer, South Dakota where several police officers were injured and a Courthouse burned. Not only the take over, but the continuing occupation of the village was accomplished with gunfire, road blockades, and other various military-type fortifications. F.B.I. agents testified about their being shot at from inside Wounded Knee. Threats were also made by various residents of the Pine Ridge Reservation that they would attempt to form their own band and to storm the insurgents holding the village of Wounded Knee. Attempts were made by the United States Government to persuade the occupiers of the village to release it, but they failed. Regardless of the roadblocks, supplies continued to reach the occupying forces in Wounded Knee. The United States' evidence establishes a need for the F.B.I. and Marshal Service to blockade the area to keep innocent people from being injured and to end the occupation of the village. Clearly this was no peaceful demonstration.

These facts establish the legality of the government roadblock on the Big Foot Trail. The government certainly had an interest in preventing guns and ammunition and other supplies from flowing to the insurgents. The government certainly had a substantial interest in what can only be called an insurrection. As the Supreme Court said in

Cunningham v. Neagle, 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55:

> "We hold it to be an incontrovertible principle that the government of the United States may, by means of physical force, exercised through its official agents, execute on every foot of American soil the powers and functions that belong to it. This necessarily involves the power to command obedience to its laws, and hence power to keep the peace to that extent." 135 U.S. 1, 60, 10 S.Ct. 658, 667.

In addition, 18 U.S.C. § 3052 provides that the Federal Bureau of Investigation, and members thereof, may "make arrests without warrant for any offense against the United States committed in their presence, or for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony." Agents who are investigating violations of federal criminal statutes clearly are acting within their authority. See, Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, cert. den. 305 U.S. 642, 59 S.Ct. 146, 83 L.Ed. 414, reh. den. 305 U.S. 673, 59 S.Ct. 241, 83 L.Ed. 436 (1938).

■■ The existence of a general insurrection or mass riot has an effect upon the reasonableness requirements of the Fourth Amendment. A riot is a situation that presents a clear danger to the populace and the police themselves and requires the unusual exercise of police power which courts should not easily or lightly interfere with. Such is the situation that we are faced with in relation to the Wounded Knee incident. This is the import of the case of the United States v. Chalk, 441 F.2d 1277 (4th Cir. 1971).

The Supreme Court has approved brief seizures of persons and limited searches of persons and cars on the street by police officers entertaining reasonable suspicions that criminal activity may be taking place. See, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.

Ed.2d 889 (1968); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1912, 20 L.Ed.2d 917 (1968); Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). The Supreme Court said in the case of Adams v. Williams:

"In *Terry* this Court recognized that 'a police officer may in appropriate circumstances and in an appropriate manner approach a person for the purpose of investigating possible criminal behavior even though there is no probable cause for an arrest.' . . . The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response." 407 U.S. 143, 146, 92 S.Ct. 1921, 1923.

\* \* \* \* \* \*

"The Court recognized in *Terry* that the policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect." 407 U.S. 143, 147, 92 S.Ct. 1921, 1923.

■ Certainly the F.B.I. agents and marshals that manned the United States perimeter around the insurgents that occupied the village of Wounded Knee were aware of the continuing resupply efforts that were taking place by those occupants. This fact gave the authorities the right to stop and conduct limited searches for the purpose of denying the occupants of Wounded Knee those supplies that were vital to the continuation of the insurrection. This authority gave the F.B.I. the right to stop Mr. Williams' Volkswagen and conduct a limited *Terry* type search.

■ The problem arises, however, by the scope of the search which the agents engaged in. As the Supreme Court said in *Terry*:

"And in determining whether the seizure and search were 'unreasonable'

our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879.

The facts known to the agents, authorized the stop of Mr. Williams. However, the scope of the *Terry* type searches are severely limited. It must be no more intensive than is necessary to protect the officer's safety. Mr. Williams was not formally under arrest at this point and, in point of fact, had not engaged in any suspicious activity. He had not attempted to avoid the roadblock or been uncooperative in the least. He was, of course, within his rights by refusing to allow a complete search of his car. The search cannot be justified as incident to lawful arrest or any of the other search warrant exceptions. The Supreme Court has recently held that there cannot be area-wide searches devoid of individualized facts indicating crime was afoot. Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). The government simply has not provided any evidence to indicate that Mr. Williams might have been engaged in any criminal activity.

The search conducted herein was the broadest and most intensive possible. It was clearly beyond the type authorized by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny. For this reason, this Court must grant the defendant's motion to suppress the evidence seized from his car on the above date.

This Court believes that there being no probable cause for arrest of the defendant, and the *Terry* type search having produced nothing upon which to predicate a search, and no other exception appearing, the defendant should have been allowed to leave the roadblock without the total search he experienced. He should have been turned away. Such is the import of the airport search cases. *See generally*, United States v. Davis,

482 F.2d 893 (9th Cir. 1973); United States v. Miner, 484 F.2d 1075 (9th Cir. 1973); United States v. Clark, 475 F.2d 240 (2nd Cir. 1973).

The circumstances herein are much different from someone coming from within the government perimeter. It is also distinguishable from any incidents that may have occurred when a vehicle approached a roadblock from outside the perimeter and then attempted to avoid that roadblock. The insurrection, the shootings and deaths that occurred at Wounded Knee in this period affect the reasonableness of the government search procedures. However, the defendant's conduct herein is more consistent with innocence than not. That being the case, the agents were limited to a *Terry* type search. The marijuana having been seized in an overbroad search, the defendant's motion to suppress should be and hereby is granted.

This Memorandum Opinion shall constitute this Court's findings of fact and conclusions of law. The defendant's attorney shall forthwith prepare the necessary Order to effectuate this Opinion.